IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ARCHIE RACHEL,                      )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   Case No. CIV-15-141-R
                                    )
JEFFREY TROUTT, *et al.*,           )
                                    )
        Defendants.                 )

# ORDER

Before the Court is the Report and Recommendation of U.S. Magistrate Judge Shon T. Erwin, Doc. 122, recommending that the Court grant Defendants' Motion for Summary Judgment, Doc. 120, due to Plaintiff's failure to exhaust administrative remedies. Plaintiff, a prisoner formerly housed at the James Crabtree Correctional Center ("JCCC"), filed an objection to the Report, Doc. 123, which warrants de novo review. Plaintiff maintains an Eighth Amendment claim against four Defendants in their individual capacity:[1] Chief Medical Officer Dr. Jeffrey Troutt, Correctional Health Services Administrator ("CHSA") Tami Grogan, Warden Janet Dowling, and Medical Services Administrator Genese McCoy. Plaintiff alleges that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. *See* Complaint, Doc. 1. Construing Plaintiff's pro se pleadings liberally, *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007), the Court hereby grants Defendants' Summary Judgment Motion for the following reasons.

---

[1] On August 11, 2016, the Court dismissed Plaintiff's claims against Defendant Carl Pettigrew. *See* Doc. 92. On April 21, 2017, the Court dismissed Plaintiff's official capacity claims. *See* Doc. 110.

## I. Relevant Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–713 (10th Cir. 2014). The moving party bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If satisfied, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). The nonmoving party "may not rest upon mere allegations" in his pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256 (1986). Rather, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (1986).

Plaintiff brings an Eighth Amendment claim pursuant to 42 U.S.C. § 1983, which protects against violations of "right[s] secured by the Constitution and laws of the United States . . . committed . . . under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who . . . must provide humane conditions of confinement; [they] must . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). In the medical care context, the Eighth Amendment requires that Plaintiff show Defendants' "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). He must satisfy three elements: (1) objective seriousness, (2) a culpable state of mind, and (3) an "affirmative link" between a prison official's conduct and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

First, Plaintiff's medical need must be "sufficiently serious"—"one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farmer*, 511 U.S. at 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, (1991)); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation omitted)).

The second requirement is subjective and requires an official's "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). This standard is equivalent to recklessness, or knowing disregard of a risk.

3

*Id.* at 836–37. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Third, Plaintiff must allege an "affirmative link" between the official's conduct and the constitutional violation, consisting of "personal involvement" and "causation." *Schneider*, 717 F.3d at 767. This requirement applies to supervisory defendants as well because even though "direct participation" is unnecessary, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676). Section 1983 "does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The "affirmative link between the supervisor and the constitutional violation" requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677).

However, before Plaintiff can pursue Section 1983 relief in federal court, the Prison Litigation Reform Act of 1995 ("PLRA") "requires timely and complete exhaustion of [available] administrative remedies . . . ." *Brewer v. Mullin*, 130 F. App'x 264, 265–66 (10th Cir. 2005) (citing 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). To do so, Plaintiff "had to comply 'with [the Department of Corrections'] deadlines and other critical procedural rules.'" *Craft v. Null*, 543 F. App'x 778, 779–80 (10th Cir. 2013) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Substantial compliance is insufficient—Plaintiff "had to properly complete the grievance process and cure any deficiencies." *Id.* (citing *Jernigan*,

304 F.3d at 1032). And even if Plaintiff completed the grievance process, the grievance must "provide[] enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint." *Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015).

> Defendants . . . bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. . . . Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him.

*Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)).

Turning to the ODOC's grievance process, Plaintiff must informally consult with the relevant staff and then follow three written steps before satisfying complete exhaustion: (1) designate a "Request to Staff" to "the appropriate staff member, detailing the issue/incident completely but briefly"; (2) if the issue remains unresolved, submit an "Offender Grievance Form" with the prior Request to Staff to the facility reviewing authority or, for medical grievances, the CHSA; (3) finally, appeal to the Administrative Review Authority ("ARA"). Special Report, Offender Grievance Process, Doc. 44-3, at 7–14. "If alleged to be of an emergency or sensitive nature, the grievance will be screened to determine if it should be handled" as such." *Id.* at 11–12. "A complaint of an emergency nature is one in which the complaint alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely preventive manner." *Id.* at 16. The reviewing authority will only grant expedited response if it deems the grievance satisfies this definition. *Id.* at 16–17.

5

## II. Discussion

The Court must compare Plaintiff's Eighth Amendment claim to his past grievances in order to assess whether his grievances "provide[d] enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint." *Pfeil*, 603 F. App'x at 671; *see also Woodford*, 548 U.S. at 90.

### A. Jeffrey Troutt

Plaintiff pleads the following against Defendant Troutt:

> He has discontinued and/or refused to provide medication plaintiff desperately needs, without any medical reason. He has refused to even look at sores all over Plaintiff's body when he saw Plaintiff. He refused to reply to Plaintiff's Requests to Staff directed to him. He refuses to have Plaintiff examined by an outside medical specialist. He is open[ly] indifferent to Plaintiff's repeated complaints of being in severe pain. He refuses to put Plaintiff on a special diet needed for his gastrointestinal condition. He seems to enjoy knowing Plaintiff is in great pain, with no type of pain reliever medication.

Doc. 1, at 12. On November 3, 2014, Plaintiff filed an "emergency" grievance, number JCCC 14-193, to Tammy Grogan: "I have great pain from the left side of my stomach to the center of my chest. I got laxative on 10-30-14 but have not had a bowel movement in several days. I hurt a lot and need immediate relief!" Doc. 44-4, at 2. He included in the form's field for "informal action taken," "This is an emergency. I need help and cannot wait for a reply to a [Request to Staff]." *Id.* The "action requested" was "See me ASAP and provide effective medicine." *Id.*

It is clear that Plaintiff did grieve a medical claim through the ODOC system, but grievance JCCC 14-193 fell short of exhaustion in two material ways. First, as Defendant Grogan instructed when returning the grievance to Plaintiff, it was "not of a sensitive and/or

6

emergency nature as described in OP-090124." *Id.* at 3. Therefore, Plaintiff had to follow the standard grievance process beginning with informal consultation and a Request to Staff. *See id.* In Plaintiff's grievance appeal to the ARA, and throughout Plaintiff's briefs, he objected that Grogan should not have rejected the grievance's emergency nature; further, she "is not qualified to say" that Plaintiff's grievance was not an emergency. *Id.* at 5. Nonetheless, upon appeal, Defendant McCoy of the ARA affirmed the grievance's non-emergency nature. *Id.* at 6. The ODOC maintains discretion to determine which grievances are emergencies. *Craft*, 543 F. App'x at 779. Plaintiff "may believe that prison officials erred in deciding his issues were not emergencies, but that does not mean that he can simply ignore their determination and opt out of the grievance procedure." *Brewer*, 130 F. App'x at 265–66. In other words, "[e]ven if [Plaintiff was] correct in characterizing his grievance as an emergency, he still would have had options open to him under the administrative process." *Craft*, 543 F. App'x at 780. Plaintiff failed to exhaust these other options, which means the PLRA bars his federal claim. *See Brewer*, 130 F. App'x at 265 (10th Cir. 2005) ("Simply presenting a defective or non-complying grievance, however, does not constitute exhaustion of remedies.").

Second, even had Plaintiff properly exhausted grievance JCCC 14-193 through the standard, non-emergency process, the grievance failed to "provide[] enough information regarding the nature of [Defendant Troutt's] alleged wrong to enable prison officials to investigate and address [Plaintiff's] complaint." *Pfeil*, 603 F. App'x at 671. His grievance concerned stomach and chest pain, constipation, and Defendant Troutt's failure to provide

7

"effective medicine."[2] Doc. 44-4, at 2. Yet, his federal claim against Troutt is far broader and unrelated; Plaintiff alleges Troutt's refusal to provide medication, look at body sores, reply to Plaintiff's Requests to Staff and "repeated complaints," recommend him to an outside medical specialist, assign a special diet for his gastrointestinal condition, and provide pain reliever medication. Doc. 1, at 12. Plaintiff did not want to start at square one and grieve pressing medical concerns, but "exhaustion requirements are designed to deal with parties who do not want to exhaust." *Woodford*, 548 U.S. at 90. Plaintiff must "do what [he] would otherwise prefer not to do, namely, to give the [ODOC] a fair and full opportunity to adjudicate [his] claims." *Id.* Accordingly, Plaintiff's claim against Defendant Troutt is barred under the PLRA.

**B. Tami Grogan**

Regarding Defendant Grogan, Plaintiff pleads:

She has no medical training, she is not a doctor, nurse, or any type of qualified health care professional. She is thus not qualified to be the Health Service Administrator (HSA) at JCCC. As the HSA, she is the designated Reviewing Authority for inmate grievances on medical issues. She returned unanswered two of Plaintiff's Emergency Grievances, JCCC 14-193 and JCCC 14-221, saying they were not of an emergency nature. That is a medical decision she is not qualified to make. She showed deliberate indifference, by not even talking to Plaintiff about his emergency request for medical care. She answers Requests to Staff specifically directed to Dr. Troutt, in violation of the grievance policy. She is aware of Plaintiff's and many other inmates' complaints about Dr. Troutt, but has done nothing about this.

---

[2] Alleging a general failure to provide medicine does not inform Defendant Troutt of a "serious medical need[]."*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Therefore, the Court considers only Plaintiff's discussion of specific ailments in his grievance and complaint to assess if Troutt had "enough information regarding the nature of the alleged wrong." *Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015).

Doc. 1, at 12–13. Unlike Plaintiff's other claims, this one was partially exhausted. Plaintiff sent a Request to Staff to Defendant Dowling, the JCCC Warden, on November 13, 2014:

> I turned in a[n] Emergency Grievance on 11-03-14 to the HSA saying I was in great pain, had swelling in my abdomen and had not had a bowel movement in several days. 8 days later, on 11-11-14 I got it back from HSA Tami Grogan saying it was not an emergency, and to start over with a [Request to Staff]. She has no medical credentials to make this decision. She is not a doctor or nurse. It was an emergency to me and still is.

Doc. 44-5, at 2. Plaintiff continued, "Tell me what qualifies Tami Grogan to be the HSA. Get me some quali[ty] Medical Help please." *Id.* Defendant Dowling answered, "Mrs. Grogan meets the qualifications for her position. If you are having medical issues, then you need to fill out a Medical Sick Call Slip to be seen by the doctor, not fill out an emergency grievance. That is not the correct procedure." *Id.* at 3.

Unsatisfied with this answer, Plaintiff filed an Offender Grievance Form to the same effect, number JCCC 14-218. *Id.* at 4. Warden Dowling again responded, "You have been advised that Mrs. Grogan CHSA is qualified for her position and as such has the authority to answer any and all grievances following policy OP-090124. Relief Denied." *Id.* at 5. Upon appeal to the ARA, *id.* at 7–8, Defendant McCoy, the Medical Services Administrator, returned the grievance unanswered for failure to submit it to the facility's health services administrator. *Id.* at 9.

Plaintiff's claim against Defendant Grogan is that she (1) is unqualified to be Correctional Health Services Administrator ("CHSA"), (2) should not have returned his "emergency" grievances, (3) answered Requests to Staff directed to Dr. Troutt, and (4) ignored Plaintiff's and others' complaints about Dr. Troutt. The first two allegations

9

were exhausted through grievance JCCC 14-218 above.[3] However, Defendant Grogan demonstrates that there is no genuine issue of material fact that could entitle Plaintiff to relief on his exhausted allegations. Again, to survive summary judgment Plaintiff must show "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104 (1976).

Defendant Grogan's alleged lack of qualifications is completely unsupported by evidence. Plaintiff "may not rest upon mere allegations" in his pleading to satisfy his burden on summary judgment. *Anderson*, 477 U.S. at 256. Moreover, even if Plaintiff presented a "genuine dispute" over whether Grogan lacks formal medical training, it is unclear that the fact is material. *Anderson*, 477 U.S. at 248. It would not necessarily disqualify her from an administrative position because Plaintiff makes no showing concerning the CHSA position's qualifications. In other words, Plaintiff has not shown how Grogan's alleged lack of CHSA qualifications demonstrates deliberate indifference to a serious medical need.

Regarding whether Defendant Grogan should have returned Plaintiff's November 3, 2014, "emergency" grievance, she shows that Plaintiff actually did receive medical care on these allegations of stomach and chest pain, constipation, and Defendant Troutt's failure

---

[3] *See* Offender Grievance Process VII(D)(1), Doc. 44-3, at 15 ("The ruling of the ARA is final . . . ."). Whether Plaintiff exhausted the second allegation—that Defendant Grogan should not have returned Plaintiff's "emergency" grievance—is a close question. Doc. 44-5, at 4. Plaintiff repeated in his Request to Staff, grievance form, and appeal that his JCCC 14-193 "was an Emergency to me and still is." *Id.* at 2, 4, 8. He also included a description of his medical issues. *Id.* Yet, Plaintiff's underlying "action requested" was the provision of information describing Grogan's CHSA qualifications, not resolution of the "emergency" nature of his medical issues. Nonetheless, Plaintiff's requests appear sufficient to "provide[] enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint." *Pfeil*, 603 F. App'x at 671.

to provide "effective medicine." Doc. 44-4, at 2. Plaintiff took prescription medication through November, 2014. *See* Doc. 45, at 7. He received a "chronic clinic and/or routine physical examination" on October 20, 2014. *Id.* at 19. At an October 30, 2014, medical visit, Dr. Troutt assigned him a "Full Liquid" medical diet; examined his complaint of "left side pain" and bowel issues; assigned a "nursing intervention routine" with medication for "abdominal pain," "constipation," and "diarrhea"; and made various recommendations to improve his condition. *Id.* at 25–28. On November 3, 2014—the day Plaintiff filed his "emergency" grievance—he had another medical visit and obtained treatment for "chest pain," a "runny nose," "congestion," an "upper respiratory infection," "abdominal pain," "constipation," and "diarrhea." *Id.* at 29–41. On November 6, 2014, he received an x-ray for his bowel and stomach issues, and a medical provider noted that he was not following earlier instructions on his liquid diet. *Id.* at 42–43. In response to Defendant's summary judgment showing, Plaintiff offers a conclusory rebuttal devoid of "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (1986). *See* Doc. 121, at 1 ("It is one thing to be seen by medical staff numerous times, but it is wholly another thing when Plaintiff receives substandard & obvious inadequate medical care/medications for his very serious medical conditions.").

This extensive evidence in the record directly refutes Plaintiff's underlying claim of deliberate indifference to a serious medical need. *See* Doc. 112, at 12. A "difference of opinion between [an] inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation*." Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Considering

11

Defendant's evidence that medical staff treated Plaintiff's issues, Plaintiff cannot show that Grogan was deliberately indifferent to a serious medical need for merely instructing Plaintiff to utilize the non-emergency grievance process.

Plaintiff failed to exhaust his remaining allegations that Defendant Grogan answered Requests to Staff directed to Dr. Troutt and ignored complaints about Dr. Troutt. Grievance JCCC 14-218 did not "provide[] enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint." *Pfeil*, 603 F. App'x at 671. Thus, Defendant Grogan is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## C. Janet Dowling

Plaintiff pleads the following against Defendant Janet Dowling:

> As the Warden of JCCC, she is responsible for the conduct of the defendants, especially given the number of prior grievances and lawsuits against them. She denied relief for Plaintiff's grievance number JCCC 14-218 regarding HSA Tami Grogan's rejection of grievance number JCCC 14-193 as not being of an emergency nature. By doing this, Warden Dowling demonstrated deliberate indifference towards Plaintiff's serious risk of harm and extreme pain. *Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013). Supervisors can be held liable in some instances, such as in this case. She knows of the many serious complaints about Dr. Troutt, but has done nothing about this out of deliberate indifference.

Doc. 1, at 13–14.

Grievance JCCC 14-218 to Defendant Dowling—objecting to Defendant Grogan's rejection of "emergency" grievance JCCC 14-193 and her alleged lack of CHSA qualifications—placed Grogan on notice of these allegations. *See* Doc. 44-5, at 4; *supra* Part II(B), at 9. However, grievance JCCC 14-218 did not concern Defendant Dowling's

12

handling of the grievance process or relevant factual matters that would allow prison officials to address Plaintiff's Eighth Amendment claim against Dowling. Plaintiff's Offender Grievance Form discussed Dowling's response to his Request to Staff, as did his appeal to the ARA. Doc. 44-5, at 4, 8. Nonetheless, Dowling's name appeared as mere background to an underlying grievance against Defendant Grogan. In no grievance did Plaintiff describe "the nature of [Dowling's] alleged wrong." *Pfeil*, 603 F. App'x at 671. The PLRA does not offer partial credit—the Court cannot consider Plaintiff's claim against Dowling merely because he mentioned her name before. "[T]he PLRA does not 'enable[ ] judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems.'" *Jernigan*, 304 F.3d at 1032 (*Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Granted, it may have appeared futile for Plaintiff to undertake the grievance process over the handling of a prior grievance, particularly when the reviewing authorities were the subjects of his grievances. Yet, "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan*, 304 F.3d at 1032 (10th Cir. 2002). Exhaustion is necessary "as long as [officials maintained] authority to take some responsive action." *Id.* (quoting *Booth*, 532 U.S. at 740). Thus, Plaintiff's claim against Defendant Dowling is barred for failure to exhaust the administrative process.

**D. Genese McCoy**

Lastly, Plaintiff's claim against Defendant Genese McCoy is also barred for failure to exhaust administrative remedies. He pleads the following against McCoy:

> She is the DOC Medical Services Administrator, and the Administrative Review Authority, for all inmate medical issue grievance appeals. She wrongfully rejected Plaintiff's grievance appeals JCCC 14-193 and JCCC 14-221, simply rubber-stamping the HSA's decision that Plaintiff's extreme pain was not of an emergency nature. She also did not examine Plaintiff, or even talk to him. Since medical records are computerized, she had access to them, and could have reviewed his medical history, she did not do so out of deliberate indifference. She wrongfully returned unanswered Grievance Appeal Number JCCC 14-218 saying that it was not properly submitted because it was a medical issue grievance that should have been submitted to the HSA instead of Warden Dowling. That is not correct. The grievance was about HSA Grogan's lack of qualifications. Thus, it should be sent to the warden, as an administrative matter. McCoy's response was pretextual evasion, and deliberate indifference.

Doc. 1, at 14–15.

Although two of Plaintiff's grievances implicated Defendant McCoy, neither was sufficient to satisfy exhaustion. The first was grievance JCCC 14-193, an "emergency" grievance complaining of stomach pain. *See* Doc. 44-4, at 2; *supra* Part II(A), at 6. On appeal to the ARA, Defendant McCoy affirmed the grievance's non-emergency nature. *See* Doc. 44-4, at 6. The second was grievance JCCC 14-221 filed on December 3, 2014, which Plaintiff also styled as an "emergency" on the Offender Grievance Form. Doc. 44-6, at 2. "I am now having greatly increased pain in my stomach and swelling up. I submitted a Request for Medical Services several days ago with no response." *Id.* He continued, "My pain is immediate. There is no time to send a [Request to Staff] and wait for a Reply, so this is an emergency situation." Plaintiff's requested action was "proper medical care immediately, [unintelligible] pain medication and diagnosis of the problem." *Id.* Defendant Grogan returned the grievance the following week: "Complaint is not of a sensitive and/or emergency nature as described in OP-090124; consequently, the standard grievance

process outlined in OP-090124 must be followed." *Id.* at 3. Plaintiff appealed to the ARA, and Defendant McCoy returned the appeal unanswered for failure to follow the standard grievance process. *Id.* at 4–6.

These two grievances failed to "provide[] enough information regarding the nature of [Defendant McCoy's] alleged wrong to enable prison officials to investigate and address his complaint." *Pfeil*, 603 F. App'x at 671. Neither grievance concerned McCoy's handling of the grievance process, her failure to examine Plaintiff, or her failure to review his medical records. Thus, without proper administrative exhaustion, Plaintiff's claim on these grounds cannot proceed to federal court.

### III. Conclusion

The PLRA bars Plaintiff's claims against Defendants Troutt, Dowling, and McCoy for failure to exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a). Plaintiff partially exhausted his claim against Defendant Grogan, and Grogan has otherwise met her burden to show "that there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, Defendants' Motion for Summary Judgment, Doc. 120, is hereby GRANTED.

IT IS SO ORDERED this 6th day of March, 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE